UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE #: 113C 1:24CR20188-RUIZ

UNITED STATES OF AMERICA,
          Plaintiff,

vs.

ANDREW SHAWN FERMIN,
          Defendant.
_____/

### DEFENDANT'S SENTENCING MEMORANDUM

Andrew Shawn Fermin, pursuant to Fed. R. Crim. P. 32(f), Rule 88.8 of the Local Rules for the Southern District of Florida, and *United States v. Booker*, 125 S. Ct. 738 (2004), hereby moves this Court for the imposition of a reasonable sentence that meets 18 U.S.C. §3553(a) Congressional sentencing objectives. That is, a sentence that is "sufficient, but not greater than necessary" to achieve the statutory purposes of punishment.

In support of this memorandum, Mr. Fermin sets forth the following statement of facts and legal argument which suggests that **a sentence of 25 month(s) imprisonment** is appropriate.

According to the PSI, at 150, based upon a total offense level of 21 and a criminal history category of I, the guideline imprisonment range for Mr. Fermin is 37 to 46 months. A sentence of 25 month(s) imprisonment is in line with USSC -JSIN data which shows that "During the last five fiscal years (FY2020-2024), there were 164 defendants whose primary guideline was §2S1.1, with a Final Offense Level of 21 and a Criminal History Category of I, after excluding defendants who received a §5K1.1 substantial assistance departure. For the 144 defendants (88%) who received a sentence of imprisonment in whole or in part, the average length of

imprisonment imposed was 25 month(s) and the median length of imprisonment imposed was 25 month(s). USSC - JSIN last visited July 10, 2025.

### PRESENTENCE INVESTIGATION REPORT'S GUIDELINES CALCULATION

On February 24, 2025, Mr. Fermin pled guilty to Count Six of a six-count Second Superseding Indictment, which charges him with conspiracy to launder monetary instruments, in violation of 18 U.S.C. § 1956(h). The Second Superseding Indictment contains forfeiture allegations and the attorney for the Government confirmed that the Government is seeking forfeiture. (PSI at 1).

The United States and Mr. Fermin agreed that, although not binding on the Probation Office or the Court, they would jointly recommend that the Court make the following findings and conclusions as to the sentence to be imposed:

(a) Base Offense Level: that pursuant to Section 2S1.1(a)(2) which, in turn, references § 2B1.1, the value of the laundered funds is more than $3,500,000 but less than $9,500,000. Accordingly, the base offense level is 26 (8+18).

(b) Specific Offense Characteristics: pursuant to § 2S1.1(b)(1), Mr. Fermin's base offense level should not be increased by 6 levels.

(c) Specific Offense Characteristics: pursuant to § 2S1.1(b)(2)(8), Mr. Fermin should receive a 2-level increase for a conviction under 18 U.S.C. § 1956.

(d) Role in the Offense: Mr. Fermin should receive a 2-level decrease as a minor participant in the offense, pursuant to § 3B1.2 of the Sentencing Guidelines.

(PSI at 4)

The Government agreed that it would recommend at sentencing that the Court reduce by two levels the sentencing guideline level applicable to Mr. Fermin's offense, pursuant to Section

3E1.1(a) of the Sentencing Guidelines, based upon Mr. Fermin's recognition and affirmative and timely acceptance of personal responsibility. If at the time of sentencing Mr. Fermin's offense level is determined to be 16 or greater, the Government will file a motion requesting an additional one level decrease pursuant to Section 3E1.1(b) of the Sentencing Guidelines. (PSI at 5).

The Probationer Officer included all the foregoing in her calculations already. Based upon a total offense level of 21 and a criminal history category of I, the guideline imprisonment range for Mr. Fermin is 37 to 46 months.

**I.      THE 18 U.S.C. § 3553(a) SENTENCING FACTORS SUPPORT A VARIANCE FROM THE RECOMMENDED GUIDELINES SENTENCE**

Section 3553(a) requires district courts to consider the following factors in imposing sentence: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the kinds of sentences available; (3) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (4) the need to provide restitution to any victim(s). 18 U.S.C. § 3553(a)(1)-(7). The end result of the analysis must be a sentence that is "sufficient, but not greater than necessary" to comply with four purposes of federal sentencing, i.e., the need for the sentence imposed (1) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment; (2) to afford adequate deterrence to criminal conduct; (3) to protect the public from further crimes of the defendant; and (4) to provide the defendant with needed training, medical care, or other correctional treatment in the most effective manner. 18 U.S.C. § 3553(a)(2).

In the instant case four factors support Mr. Fermin's respectful suggestion that a sentence of 25 month(s) imprisonment is "sufficient, but not greater than necessary" to serve the purposes of federal sentencing under the circumstances of this case:

   a. The nature and circumstances of the offense and kinds of sentences available;

   b. The history and characteristics of the defendant, including prompt cooperation with the Government;

   c. The need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct;

   d. Deterrence and the need to protect the Public.

**a. The Nature and Circumstances of the Offense.**

Mr. Fermin is a zero-points offender, he received an adjustment for minor role already, and he is not charged with a violent crime or a crime that involves an identifiable victim. There is no mandatory minimum for the offense Mr. Fermin is charged with either.

**b. Mr. Fermin's Personal History and Characteristics.**

The current offense is a one-time mistake that Mr. Fermin greatly regrets and does not reflect who Mr. Fermin really is.

Mr. Fermin was born in Brooklyn, New York, on November 11, 1985. He has three siblings and two parents with whom he maintains close and lovingly rapports. They are aware of Mr. Fermin's current predicament and remain supportive. Ex A, Composite.

Mr. Fermin has no substance abuse problem and no mental health problems. He is married to Mrs. Kirsis Castillo, age 40, who also remain supportive of her husband during this difficult phase of their lives. One child, Logan Fermin, age 5, was born to the Fermins' from their marital relation. Mr. Fermin also has two adult stepchildren, as a result of Ms. Castillo's former marriage, Gavin Gadsden, age 21, and Matthew Gadsden, age 19. The family owns a house in Pembroke Pines where they reside together. Mrs. Castillo is so supportive of her

husband that she specifically asked the defense to ask this Honorable Court for permission to speak to the Court directly during the sentencing hearing.

Mr. Fermin has always maintained stable employment.

James Thomas Hawkins employed Mr. Fermin for two years. He wrote a letter to the Court and stated that, over that time, Mr. Fermin proved himself as a highly capable and dependable employee and became a trusted friend. Ex A, composite. He further wrote:

> "In both personal and professional settings, Andrew has always demonstrated integrity, discipline, and compassion. He managed all of our Southern Florida warehouse operations with a remarkable level of professionalism and leadership. What stood out most was his willingness to go above and beyond — traveling to assist other markets, mentoring his colleagues, and always leading by example. He treated everyone with kindness and respect and earned the loyalty and admiration of his team."
> "I can assure you that he is remorseful and determined to make amends. I fully support him during this difficult time and will do what I can to help him get back on his feet, including helping him seek future employment opportunities."

Ex A, Composite.

Jorge Fernandez, a MDFR Firefighter and friend of Mr. Fermin, has known Mr. Fermin for over 30 years and wrote that "Andrew's character shines in the way he interacts with others. He possesses a unique ability to uplift those around him, often putting their needs before his own. Whether through mentorship, active listening, or simply offering a word of encouragement, he creates an environment where people feel valued and supported." Ex A, composite.

Several family members and friends of Mr. Fermin wrote heartfelt character reference letters to the Court. Stacey Leeann Fermin-Hernandez, the eldest sister of Mr. Fermin; Pamela G. Dinnoo cousin of Mr. Fermin; Jenndy Castellanos, wife of a cousin of Mr. Fermin. Didier Emmanuel Roche and Steven Jacques, who have been friends with Mr. Fermin for many years also wrote letters to the Court.

The one letter that captures Mr. Fermin's remorse for his actions and his determination to be better and do better in the future, and that summarizes the strong support Mr. Fermin is receiving from family and friends was written by Miguel Duran, brother-in-law of Mr. Fermin, and New York City Police Officer:

> "My name is Miguel Duran, and I am a police officer in New York City. I am writing this letter as a character reference for my brother-in-law, Andrew Shawn Fermin
> Andrew has expressed to me how sincerely sorry he is for his actions. He understands that what he did was wrong, and he fully accepts the consequences of his behavior. He carries a deep sense of regret, not only for the legal trouble he is facing, but also for the impact it has had on his family and the people who care about him.
> We've had many conversations where he has shared his plans for turning his life around. He is committed to making better choices and being a better father, brother-in-law, and member of society. He wants to rebuild his life with integrity, grounded in responsibility and family values. I believe that with the right support, Andrew can and will be a positive force in his community and a reliable father to his son.
>
> *As a law enforcement officer, I do not take lightly the importance of accountability and justice. But I also believe in redemption, rehabilitation, and second chances, especially when a person shows genuine remorse and a sincere desire to change, as Andrew has."*

Ex A, composite (emphasis added).

**b1. Support of family & friends equals lower recidivism.**

As evidenced by the letters written to the Court, Mr. Fermin has the support of his family and friends to aid in his rehabilitation[1]. *See U.S. v. Sayad,* 589 F.3d 1110 (10th Cir. 2009) (where defendant guidelines 57 months, sentence of probation is reasonable in part because, unlike in most cases, here strong family support will aid rehabilitation). Courts have considered family ties

---

[1] Shirley R. Klein *et al., Inmate Family Functioning*, 46 int'l J. Offender Therapy & Comp. Criminology 95, 99-100 (2002) ("[A]lthough family ties do not guarantee success after release, the absence of such ties increases the likelihood of failure. The relationship between family ties and lower recidivism has been consistent across study populations, different populations, different periods, and different methodological procedures.").

6

important to sentencing decisions. In the Commission's 2010 survey of United States district judges, 62% said that family ties and responsibilities are "ordinarily relevant" to the consideration of a departure or variance.[2]

**b2. Full Cooperation with the Government warrants a downward departure.**

Mr. Fermin entered an early plea and engaged in full debrief with the Government, sharing truthful and complete information about his own conduct and that of others. While his cooperation did not result in a 5K1.1 motion, courts have routinely held that non-substantial cooperation may nonetheless warrant a downward variance under § 3553(a).

*United States v. Fernandez*, 443 F.3d 19, 33 (2d Cir. 2006) is the seminal case that explicitly stands for the proposition that a District Court may consider a defendant's cooperation under § 3553(a), even when the government has not made a § 5K1.1 motion:

> "We agree that in formulating a reasonable sentence a sentencing judge must consider "the history and characteristics of the defendant" within the meaning of 18 U.S.C. § 3553(a)(1), as well as the other factors enumerated in § 3553(a), and should take under advisement any related arguments, including the contention that a defendant made efforts to cooperate, even if those efforts did not yield a Government motion for a downward departure pursuant to U.S.S.G. § 5K1.1 ("non-5K cooperation"). Section 3553(a)(1), in particular, is worded broadly, and it contains no express limitations as to what "history and characteristics of the defendant" are relevant. This sweeping provision presumably includes the history of a defendant's cooperation and characteristics evidenced by cooperation, such as remorse or rehabilitation."

*Fernandez*, overruled on other grounds by *Rita v. United States*, 551 U.S. 338 (2007).

The 11th Circuit adopted *Fernandez* in *United States v. Barner*, 572 F.3d 1239, 1250 (11th Circ. 2009): "Indeed, after *Booker*, a judge basing a sentence under the considerations outlined in 18 U.S.C. § 3553 may take a defendant's substantial assistance into account even if a prosecutor

---

[2] U.S.S.C., *Results of Survey of United States District Judges January 2010 through March 2010,* Table 13 (June 2010), http://www.ussc.gov/research-and-publications/research-projects-and-surveys.

withdraws (or does not file) a § 5K1.1 motion. *United States v. Fernandez*, 443 F.3d 19, 33 (2d Cir.2006)." *Id.*

Similarly *United States v. Robinson*, 741 F.3d 588 (5th Cir. 2014), and *United States v. Gapinski*, 561 F.3d 467 (6th Cir. 2009), highlight that courts can consider a defendant's cooperation under § 3553(a) for purposes such as demonstrating acceptance of responsibility or reducing the likelihood of recidivism, even without a government motion.

Therefore, Mr. Fermin's respectful request for a downward departure and a sentence of 25 month(s) imprisonment is well supported in law and equity.

### c. The Need to Avoid Unwarranted Disparity Among Similar Offenders

The respectfully suggested sentence of 25 month(s) imprisonment is in line with USSC - JSIN data which shows that "During the last five fiscal years (FY2020-2024), there were 164 defendants whose primary guideline was §2S1.1, with a Final Offense Level of 21 and a Criminal History Category of I, after excluding defendants who received a §5K1.1 substantial assistance departure. For the 144 defendants (88%) who received a sentence of imprisonment in whole or in part, the average length of imprisonment imposed was 25 month(s) and the median length of imprisonment imposed was 25 month(s). USSC - JSIN last visited July 10, 2025.

Furthermore, the guidelines for Diovany Gutierrez, the most culpable defendant in the conspiracy, as calculated in his PSI, were 262-327 month(s) imprisonment (with a 6 level enhancement for role, a total offense level of 39 and criminal history category of I). For those guidelines the JSIN data average was 159 month(s) imprisonment and median 168 month(s) imprisonment. Mr. Gutierrez's defense team objected to the calculations in the PSI and argued that Mr. Gutierrez's guidelines were 135-168 with total offense level of 33, JSIN average 89,

median 84. Eventually this Honorable Court sentenced Mr. Gutierrez to 115 month(s) imprisonment and three (3) years of supervised release.

Therefore, Mr. Fermin's respectful request for a downward departure and a sentence of 25 month(s) imprisonment is well supported in law and equity.

**d. Deterrence and the Need to Protect the Public.**

The 25 month(s) of incarceration that Mr. Fermin respectfully suggested are deterrence because a sentence of 25 month(s) imprisonment is in line with the statistics for similarly situated defendants.

As per the need to protect the Public, Mr. Fermin pleaded guilty to a Title 18 offense, there is no identifiable victim (PSI at 84), and his actions served a larger money laundering organization ("MLO") operating out of Colombia (PSI at 46-55); therefore, there is no need to protect the US Public from Mr. Fermin's actions.

## CONCLUSION

For the foregoing reasons and any others that may appear to the Court, or that may develop at the sentencing hearing, Mr. Fermin respectfully requests that this Court impose a period of incarceration of 25 month(s).

Dated this July 22, 2025.

Respectfully submitted,

Chad Piotrowski, Esq.
Piotrowski Law
Attorney at Law
100 N. Biscayne Blvd., Suite 2301
Miami, Florida 33132
Telephone:   (305) 204-5000
Facsimile:   (305) 204-6000
/ s / *Chad Piotrowski*
Chad Piotrowski, Esq.
FL Bar No. 33507
chad@piotrowski.law

/ s / Sabrina Filomena
Sabrina Filomena
Florida Bar Number: 115459
Attorney for Defendant
Piotrowski Law
169 E. Flagler Street
Suite 1600
Miami, Florida 33131
Phone  (305) 204-5000
sabrina@piotrowski.law

**CERTIFICATE OF SERVICE**

I hereby certify that on this July 22, 2025, a true and correct copy of the above and foregoing has been furnished to the Clerk of this Court by using CM/ECF system which will send a notice of electronic filing to the Government.

/ s / *Chad Piotrowski*

*/s / Sabrina Filomena*