UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.  24-CR-20188-RUIZ(s)(s)

UNITED STATES OF AMERICA

v.

ANDREW SHAWN FERMIN,

    **Defendant.**
_____/

### GOVERNMENT'S RESPONSE TO DEFENDANT'S SENTENCING MEMORANDUM AND REQUEST FOR A DOWNWARD VARIANCE

The United States, by and through the undersigned Assistant United States Attorney, files this Response to the Defendant's Sentencing Memorandum and Request for a Below Guidelines Sentence ("Mem.") [DE251]. The government opposes the Defendant's request for a downward variance.[1] The government concurs with the Presentence Investigation Report's ("PSR") calculation of the guidelines as 37 to 46 months' imprisonment and respectfully requests the Court sentence the Defendant at the low end of the guideline range, which is sufficient but not greater than necessary to serve the goals of the 18 U.S.C. § 3553(a) factors.

### OFFENSE CONDUCT

From at least as early as February 2024 through August 2024, the Defendant joined his co-conspirators in using fictitious businesses to legitimize bulk cash pick-ups of more than $40 million U.S. dollars in narcotics proceeds. PSR ¶¶ 17-23, 46-55. These actions served a larger money laundering organization ("MLO") operating out of Colombia. *Id.* ¶¶ 17-23.

---

[1] The government treats the defense's request for a below-guideline sentence as a request for a downward variance—even though the defendant refers to both a "departure" and a "variance"—because the defense does not cite specific section(s) of the Sentencing Guidelines when discussing a downward departure and instead appears to rely on the § 3353(a) factors.

1

Generally, the MLO recruited individuals in the U.S. to create fictitious businesses and open corresponding bank accounts across different banks. *Id*. The purported account holders, including the Defendant, directed the banks to notify them whenever funds were deposited into their accounts. *Id.* They then provided the account information to co-conspirators in Colombia. *Id.* These account holders, like the Defendant, then received a percentage, typically 0.5 to 1%, of the monies deposited into their accounts by the MLO. *Id.*; *id.* ¶¶ 46-47.

Co-conspirators, including Gutierrez, then directed others to travel throughout the U.S. to pick up bulk cash narcotics proceeds from other individuals. PSR ¶¶ 17-23, 46-48. The individual who picked up the money then often sent a photograph to the co-conspirators in Colombia of the cash, counted the cash, and deposited it into various bank accounts, typically in amounts less than $10,000 to avoid reporting requirements. *Id.* ¶¶ 17-23, 46-48. Once deposited, the co-conspirators in Colombia accessed the funds in the account holders' bank accounts, like the Defendant's, and wired the funds to other entities. *Id*.

For each wire, the banks sent a text with a one-time passcode ("OTP") to a phone number associated with the account holder that then had to be provided to the bank within five minutes to authorize the wire transfer. PSR ¶¶ 17-23, 46-48, 52-55. The account holder—or someone with this phone number—had to provide this OTP to the Colombian co-conspirators within five minutes of receiving it. *Id.* Both the individuals picking up the physical cash and the bank account holders maintained detailed records of the transactions and any associated costs to ensure they would be reimbursed and receive their commission payments. *Id.*

Beginning in February 2024, the Defendant formed the fictitious business GML Merchandise LLC and opened corresponding bank accounts through which narcotics proceeds totaling $6,986,985 were laundered. PSR ¶¶ 46-54. In addition to forming a fake company and

2

opening bank accounts for an illegitimate business, the Defendant provided OTPs to authorize wire transfers and documented his expenses and commissions in spreadsheets—saved on his official Broward Health laptop—he then provided to receive his commission. *Id.*

The Defendant was arrested on June 11, 2024. PSR ¶ 65. Initially, the Defendant confirmed that he owned GML Merchandise LLC, but denied any knowledge of money laundering activities, telling law enforcement "I don't know anything. I don't know anything about what they do." *Id.* ¶ 66.

## ARGUMENT

The Section 3553(a) factors warrant a sentence at the low end of the guidelines for the Defendant, resulting in 37 months' imprisonment. Meanwhile, the Defendant has requested the Court vary downward and sentence the Defendant to 25 months' imprisonment, which is not warranted here. Mem. at 1.

In fashioning a sentence, the Court should place particular emphasis on three factors in the Defendant's case: the nature and circumstances of the offense, the history and characteristics of the Defendant, and the need for the sentence to reflect the seriousness of these crimes as well as promote respect for the law. *United States v. Rosales-Bruno*, 789 F.3d 1249, 1254 (11th Cir. 2015) (stressing that the sentencing court "is permitted to attach great weight to one factor over others").

The Defendant's criminal actions—transferring, authorizing, and legitimizing money through fraudulent businesses and bank accounts—fuel all other forms of criminality. The Defendant and his co-conspirators enabled criminals to transfer, access, and legitimize their narcotics proceeds, all while using the U.S. financial system. Without the Defendant's willingness to put his name behind a fraudulent business and corresponding bank accounts as well as to authorize deposits and transfers of funds that he knew he had no legitimate interest in, narcotics

traffickers could not access their ill-gotten gains. The defense claims the Court should vary downward, in part, because his crimes had no "identifiable victim" and were not "violent." Mem. at 4. But the Sentencing Guidelines already adequately factor in these characteristics—as well as the others the defense cites, including the defendant's minor role and lack of criminal history, *id.*—and so, the Defendant should not be rewarded twice over. In addition, these types of financial crimes are pernicious because people like the Defendant and his co-defendants—U.S. citizens or permanent residents with no prior criminal convictions—view these crimes as non-violent and victimless, which helps them to justify their participation.

The defense also cites the Defendant's "full cooperation" with law enforcement as a reason for the Court to vary downward. Early on, the Defendant admitted his guilt for his crimes. But he did not cease his participation in these crimes or inform the authorities on his own—rather, he only did so once he and his co-conspirators were caught. The Guidelines already adequately consider the Defendant's acceptance of responsibility.

The Defendant repeatedly chose to legitimize dirty money through his actions and to seek recompense for his crimes when he submitted his ledgers. The Defendant's crimes, and the additional criminal activity they enabled, are serious. A bottom of the guidelines sentence adequately considers the nature and circumstances of this serious offense as well as promotes respect for the law.

Like his co-defendants, letters submitted on the Defendant's behalf highlight his commitment to his family, his friends, and his work. *See* Composite Exhibit A, Letters [DE251-1]. The Defendant cites his family and friends as well as his personal characteristics as reasons to vary downward. But these family ties—including the Defendant's wife, child, and step-children—and the Defendant's extensive support network existed before and during his participation in the

4

criminal conspiracy. The letters submitted on his behalf repeatedly highlight the Defendant's work ethic and commitment. Letters [DE251-1]. But despite his regular employment, his family connections, and his full life outside of this criminal conspiracy—all reasons he now offers for the Court to vary downward—the Defendant chose to repeatedly break the law by laundering narcotics proceeds through the U.S. financial system. This was not a "one-time mistake," as the Defendant claims, but a choice the Defendant made over and over again with each time he allowed dirty money to be deposited into his account and each time he authorized its transfer. Mem. at 4.

## CONCLUSION

For the reasons stated above, the Defendant's conduct warrants a sentence at the low end of the guideline range.

Respectfully submitted,

HAYDEN P. O'BYRNE
UNITED STATES ATTORNEY

By:  */s/ Katherine W. Guthrie*
Katherine W. Guthrie
Assistant United States Attorney
Court ID No. A5502786
99 NE 4th Street
Miami, Florida 33132-2111
Phone: (305) 961-9117
Email: Katherine.guthrie@usdoj.gov

## **CERTIFICATE OF SERVICE**

  I HEREBY CERTIFY that on July 29, 2025, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF and it has been served on all counsel of record in the same manner.

                */s/Katherine W. Guthrie*
                Katherine W. Guthrie
                Assistant United States Attorney